1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                  **SOUTHERN DISTRICT OF CALIFORNIA**
10

11   MICHAEL SEVILLA,                        Civil No. 15cv1280-DMS (JLB)
12                          Petitioner,
13        vs.                               **REPORT AND RECOMMENDATION
                                            OF UNITED STATES MAGISTRATE
14   AMY MILLER, Warden,                    JUDGE RE DENYING PETITION
                                            FOR A WRIT OF HABEAS CORPUS**
15                          Respondent.
16

17        Michael Sevilla (hereinafter "Petitioner") is a California prisoner proceeding pro

18   se and in forma pauperis with a Petition for a Writ of Habeas Corpus pursuant to 28

19   U.S.C. § 2254.  (ECF No. 1.)  He challenges a November 25, 2013, prison disciplinary

20   proceeding at which he was found guilty of possession of dangerous contraband (a cell

21   phone), which resulted in the forfeiture of 61 days of earned custody credits and the loss

22   of 30 days of yard privileges.  (Id. at 35.)  He claims his federal due process rights were

23   violated by the guilty finding, and by the deprivation of his state-created liberty interest

24   in his earned custody credits, because there is insufficient evidence to support the finding

25   at the disciplinary hearing that he possessed the contraband.  (Id. at 19-31.)

26        Respondent has filed an Answer ("Ans.") and lodged portions of the state record.

27   (ECF Nos. 20-21.)  Respondent argues that because success on Petitioner's claims,

28   including restoration of his custody credits, will not necessarily result in a speedier

release from custody, his claims are not cognizable on federal habeas. (Memorandum of Points and Authorities in Support of Answer ["Ans. Mem."] at 2-4.)   Respondent alternately argues that to the extent the claims are cognizable on habeas, Petitioner is not entitled to habeas relief because the adjudication of the claims by the state court (on the basis that sufficient evidence supports the guilty finding), is neither contrary to, nor involves an unreasonable application of, clearly established federal law.  (Id. at 4-7.) Although Petitioner was granted leave to do so, he has not filed a Traverse.

For the following reasons, the Court finds that because success on the merits of Petitioner's claims will not necessarily result in is immediate or speedier release from custody, his claims are not cognizable on federal habeas, and must be brought, if at all, in a Complaint filed pursuant to 42 U.S.C. § 1983.  Although the Court has discretion to construe such a petition as a § 1983 Complaint, the Court finds the current Petition is not amenable to such a construction, and recommends against so construing the Petition.  The Court alternately finds that, to the extent the claims sound in habeas, they fail on their merits.  The Court therefore recommends the Petition be denied.

## I.    Background

On October 3, 1997, Petitioner was convicted of one count of violating California Vehicle Code § 20001(a) (hit and run causing death or injury) for which he was sentenced to a determinate term of four years in prison, and one count of violating Penal Code § 187 (murder) for which he was sentenced to a consecutive indeterminate term of 15 years-to-life with the possibility of parole. (Lodgment No. 1 at 1-2.) Petitioner began serving his indeterminate life sentence as soon as he completed serving his four-year determinate sentence.  See Cal. Penal Code § 669(a) (West Supp. 2016).

On November 13, 2013, while housed at Centinela State Prison in Imperial, California, a search of the cell Petitioner shared with Inmate Lopez revealed, hidden in a light fixture, four cell phones, four cell phone chargers, two cell phone batteries, two "SD cards," and one pair of metal tweezers. (Lodgment No. 2 at 3.)  Petitioner was charged with possession of dangerous contraband, a cell phone, and a disciplinary hearing

was held on November 25, 2013.  (Id. at 2.)  Petitioner pleaded not guilty and denied knowledge of the presence of the cell phone in his cell.  (Id.)  Petitioner's cellmate, Inmate Lopez, testified at the hearing that the confiscated items belonged to him and Petitioner did not know they were in their cell.  (Id.)  Petitioner was found guilty of "dangerous contraband possession of cell phone," and was assessed 61 days forfeiture of accrued behavioral custody credits and 30 days loss of afternoon and night yard privileges.  (Id. at 3.)  He unsuccessfully appealed the guilty finding and loss of credits through the prison administrative appeal process, ending with a Director's Level decision dated July 23, 2014.  (Lodgment Nos. 3-4.)

While the administrative appeal process was proceeding, Petitioner's first parole hearing was held on June 6, 2014, and he was denied parole for five years.  (Lodgment No. 11 at 1.)  His next scheduled parole hearing is set for June 6, 2019.[1]  (Id.)

On December 3, 2014, Petitioner filed a habeas petition in the state superior court, raising the same claims he presents here.  (Lodgment No. 5.)  After noting a failure to use the proper form and a four-month filing delay, the superior court stated:

> Petitioner appears to take issue with the concept of "constructive possession" which is frequently the basis for finding of guilt in CDCR Form 115 proceedings involving the existence of contraband in relatively confined areas shared by more than one inmate, for example two inmate cells. Petitioner's argument and citation to a Sacramento County Superior Court case from 1991 notwithstanding, the case that provides the answer to Petitioner's question is *In re Zepeda* (4th Dist., 2006) 141 Cal.App.4th 1493, which remains good law, binding on this court.  That case involved a similar situation involving razor blades, which had the potential for use as weapons, which were present in a shared cell.  Even though the petitioner's cell mate affirmed ownership of the blades and both he and the petitioner denied petitioner had any knowledge of them, the petitioner was held to have constructive possession of them in violation of Cal. Code Regs., tit. 15, § 3006, subd. (a) sufficient to warrant the disciplinary measures imposed. (*Id.* at 1499-1500.)  Because section 3006(a) equates cellular phones with weapons, the constructive possession rule would also apply to cases involving cellular phones.

---

[1] A prisoner's minimum parole eligible date (MPED) is set by taking into account any credits earned or lost.  In re Jenkins, 50 Cal.4th 1167, 1179-80 (Cal. 2010).  As discussed below, the record is unclear if Petitioner's 2014 MPED was delayed 61 days by the loss of his custody credits in 2013, or if success on his claims and restoration of his credits would advance his next parole hearing.  However, it is clear that his MPED has passed and that the disciplinary infraction is only one of several factors available for the Parole Board to consider.  Cal. Code Regs., tit. 15, § 2402(a).

1    This court's task is to apply the law as established by the legislature
2    and decisions of the appellate courts.  Until the law changes, Petitioner's
     argument is not well taken.  [¶]  The petition is therefore denied.

3  (Lodgment No. 6, <u>In re Sevilla</u>, EHC01883, order at 1-2 (Cal.Sup.Ct. Dec. 12, 2014).)

4      Petitioner then presented the same claims to the state appellate court in a habeas

5  petition filed on February 24, 2015.  (Lodgment No. 7.)  The appellate court denied the

6  petition, stating:

7    Sevilla contends the evidence does not support a finding of guilt
8    because the cell phones and their accessories belonged to his cellmate and
     he did not know that they were hidden in his cell.  The Legislature has given
9    the Department of Corrections and Rehabilitation broad authority to
     discipline persons confined in state prisons.   (Pen. Code, § 5054.)
10   Generally, prison discipline falls within the expected parameters of the
     sentence imposed by the court of law and does not implicate the due process
11   clause or create a right to judicial review.  (*Sandin v. Conner* (1995) 515
     U.S. 472, 482-483.)  Prison disciplinary findings must be supported by
12   "some evidence."  (*In re Rothwell* (2008) 164 Cal.App.4th 160, 165, citing
     *Superintendent v. Hill* (1985) 472 U.S. 445, 455.)  The relevant question is
13   whether there is any evidence in the record that could support the
     conclusion reached by the prison authorities. (*Superintendent v. Hill, supra*,
     at pp. 455-456.)
14
15   Here, the correctional officer found the cell phones hidden in a
     common area of the cell equally accessible to both Sevilla and his cellmate.
16   Under our limited review, this constitutes "some evidence" to support a
     finding of constructive possession even if Sevilla's cellmate acknowledged
17   that the contraband was his and Sevilla maintains that he did not know about
     it.  (*In re Zepeda* (2006) 141 Cal.App.4th 1493, 1500.)

18  (Lodgment No. 8, <u>In re Sevilla</u>, No. D067575, slip op. at 1-2 (Cal.App.Ct. Mar. 10,

19  2015).)

20      Petitioner presented the same claims in a habeas petition filed in the state supreme

21  court on March 30, 2015.  (Lodgment No. 9.)  That petition was denied with an order

22  which stated: "Petition for writ of habeas corpus denied."  (Lodgment No. 10, <u>In re

23  Sevilla</u>, S225517, order at 1 (Cal. June 10, 2015).)

24  **II.    Petitioner's Claims**

25      Petitioner alleges here, as he did in state court, that his federal due process rights

26  were violated by the guilty finding (Claim 1), and by the deprivation of his state-created

27  liberty interest in the 61 days of good time credits he forfeited (Claim 2), because there

28  is no evidence he was aware the cell phone was in his cell.  (ECF No. 1 at 19-31, citing

Superintendent v. Hill, 472 U.S. 445, 453-54 (1985) (holding that revocation of good time custody credits in which a state prisoner has a protected liberty interest "does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record."), quoting Wolff v. McDonnell, 418 U.S. 539, 558 (1974) (holding that federal due process requires procedural protections before a prisoner can be deprived of a state-created liberty interest in good time custody credits).)  He argues that the cell phone was not found in plain sight, but was hidden in a light fixture which was accessible only from the top bunk, which was assigned to his cellmate and therefore not in his area of control, precluding an inference he was aware it was there, and without that inference there is no evidence of constructive possession. (Id.) Petitioner presents an affidavit by his cellmate Inmate Lopez who states that he only accessed the contraband when Petitioner was not in their cell, and repeats his testimony from the disciplinary hearing that Petitioner had no knowledge the contraband was in their cell.  (Id. at 43.)

## III.   Discussion

Respondent argues that Petitioner's claims are not cognizable on federal habeas because success on the merits of the claims will not necessarily result in his speedier release from custody.  (Ans. Mem. at 2-4.)  Respondent alternately contends that, to the extent the claims are cognizable on federal habeas, relief is not available because the adjudication of the claims by the state court is neither contrary to, nor an unreasonable application of, clearly established federal law.  (Id. at 4-7.)

### A.   Cognizability of Petitioner's Claims

"Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 28 U.S.C. § 2254, and a complaint under the Civil Rights Act of 1871 . . ., 42 U.S.C. § 1983. Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus."  An inmate's challenge to the circumstances of his confinement, however, may be brought under § 1983.

Hill v. McDonough, 547 U.S. 573, 579 (2006) (citations omitted), quoting Muhammad v. Close, 540 U.S. 749, 750 (2004).

In determining whether a state prisoner's claim should be brought under § 1983 or habeas, the Supreme Court has held that the sole remedy in federal court for a prisoner seeking restoration of good-time credits which would result in immediate release from custody is a writ of habeas corpus, Preiser v. Rodriquez, 411 U.S. 475, 487-89 (1973), and that habeas is the sole vehicle for a damages claim challenging a prison disciplinary proceeding which "would, if established, necessarily imply the invalidity of the deprivation of good-time credits," even where the prison was not seeking restoration of the credits. Edwards v. Balisok, 520 U.S. 641, 646 (1997). In fact, when a state prisoner brings a § 1983 action alleging a due process violation in connection to the loss of custody credits which, if successful, necessarily requires earlier release from custody, the district court must dismiss the action without prejudice to the petitioner to first seek habeas relief in order to invalidate the state judgment. See Heck v. Humphrey, 512 U.S. 477, 481-87 (1994) (holding that a state prisoner may not seek damages under § 1983 if "establishing the basis for the damages claim necessarily demonstrates the invalidity of . . . any outstanding criminal judgment."); but see Muhammad, 540 U.S. at 751 ("Heck's requirement to resort to state litigation and federal habeas before § 1983 is not, however, implicated by a prisoner's challenge that threatens no consequence for his conviction or duration of his sentence.")

In Wilkinson v. Dotson, 544 U.S. 74 (2005), the Court reiterated its previous holding that "a prisoner in state custody cannot use a § 1983 action to challenge the fact or duration of his confinement. . . . [but] must seek federal habeas corpus relief (or appropriate state relief) instead." Id. at 78, citing Preiser, 411 U.S. at 489, Wolff, 418 U.S. at 554, Heck, 512 U.S. at 481 and Balisok, 520 U.S. at 618. The Court rejected the argument that habeas was the "sole avenue for relief" for claims challenging the constitutionality of parole proceedings, because there was no showing that success on such claims "would necessarily demonstrate the invalidity of confinement or its duration." Id. at 82. Most recently, the Supreme Court stated in dicta in a § 1983 case seeking DNA testing that: "Dotson declared, however, in no uncertain terms, that when

a prisoner's claim would not 'necessarily spell speedier release,' that claim does not lie at 'the core of habeas corpus,' and 'may be brought, if at all, under § 1983.'" Skinner v. Switzer, 562 U.S. 521, 535 n.13 (2011), quoting Dotson, 544 U.S. at 82.

An en banc panel of the Ninth Circuit recently conducted a survey of those cases and noted that the Supreme Court "has long held that habeas is the exclusive vehicle for claims brought by state prisoners that fall within the core of habeas, and such claims may not be brought in a § 1983 action." Nettles v. Grounds, 830 F.3d 922, 927 (9th Cir. 2016) (en banc), petition for cert. filed, Oct. 21, 2016 (No. 16-6556). The Nettles court found that: "Based on our review of the development of the Court's case law in this area, we now adopt the correlative rule that a § 1983 action is the exclusive vehicle for claims brought by state prisoners that are not within the core of habeas." Id. Thus, the Ninth Circuit has held that § 1983 and habeas are mutually exclusive, and a state prisoner's claims either lie at "the core of habeas corpus" and are subject to the provisions of the Anti-terrorism and Effective Death Penalty Act ("AEDPA"), or they "challenge[] any other aspect of prison life" and are subject to the provisions of the Prison Litigation Reform Act ("PLRA") and "must be brought, if at all, under § 1983." Id. at 931, citing Preiser, 411 U.S. at 487, and Skinner, 562 U.S. at 535 n.13. The Nettles Court went on to state that the district court may construe a habeas petition which presents claims which do not lie at the core of habeas as a § 1983 action "after notifying and obtaining informed consent from the prisoner." Nettles, 830 F.3d at 936 ("If the complaint is amenable to conversion on its face, meaning it names the correct defendants and seeks the correct relief, the court may recharacterize the petition so long as it warns the *pro se* litigant of the consequences of the conversion and provides an opportunity for the litigant to withdraw or amend his or her complaint.")

The California state prisoner in Nettles was serving an indeterminate term of life imprisonment with the possibility of parole when he was denied parole at his first parole hearing held in 2004, and denied parole again at his second hearing in 2009. Id. at 925. He filed a federal habeas petition in 2011 alleging that the parole board's decision was

1  based at least in part on a 2008 disciplinary hearing during which he was denied his
2  federal due process rights, and which resulted in a four-month term in the segregated
3  housing unit and a loss of 30 days custody credits.  Id.

4      The Ninth Circuit found that Nettles' claim did not lie within the core of habeas
5  corpus, irrespective of his request for restoration of his custody credits, because success
6  on the claim "would not necessarily lead to immediate or speedier release because the
7  expungement of the challenged disciplinary violation would not necessarily lead to a
8  grant of parole."  Id. at 934-35.  The Court considered the reasons Nettles had been
9  denied parole, and noted that "[a] rules violation is merely one of the factors shedding
10  light on whether a prisoner" is suitable for parole.  Id. at 935.  The Court found that
11  "[b]ecause the parole board has the authority to deny parole 'on the basis of any of the
12  grounds presently available to it,' the presence of a disciplinary infraction does not
13  compel the denial of parole, nor does an absence of an infraction compel the grant of
14  parole."  Id., quoting Ramirez v. Galaza, 334 F.3d 850, 859 (9th Cir. 2003) ("Here, if
15  successful, Ramirez will not necessarily shorten the length of his confinement because
16  there has been no showing by the State that the expungement Ramirez seeks [of a
17  disciplinary infraction for battery on his cell mate with a weapon with serious bodily
18  injury] is likely to accelerate his eligibility for parole.")

19      Respondent argues that Nettles and Petitioner are similarly situated because they
20  have both reached their MPED, and both challenge prison disciplinary proceedings which
21  resulted in the loss of custody credits which have no effect on the length of their
22  confinement because they are serving indeterminate life sentences.  (Ans. Mem. at 3.)
23  Respondent contends neither can show that expungement of their disciplinary finding will
24  necessarily shorten their prison term or lead to an earlier release.  (Id.)

25      Although Nettles' MPED was already set when his credits were forfeited,
26  Petitioner here forfeited his credits in 2013, and reached his MPED in 2014.  (Ans. at 3.)
27  Nevertheless, even if restoration of the credits would would advance Petitioner's next
28  parole hearing by 31 days, there is no indication it would affect Petitioner's release date.

-8-

15cv1280

See Jenkins, 50 Cal.4th at 1179-80 (noting that a prisoner serving an indeterminate life sentence has his or her MPED advanced though custody credits, but their actual release from prison is wholly dependent on the parole decision).

Rather, this case is similar to Dotson, relied on by Nettles, where success on the prisoners' claims would have merely provided new parole eligibility and suitability hearings. In Dotson, one of the petitioners was found ineligible for parole consideration and one was found ineligible for parole release; both brought challenges under § 1983 to the procedures used by their respective parole boards and both sought new hearings under what they alleged to be the proper standards. Dotson, 544 U.S. at 76-77. The Supreme Court noted that under its precedents a state prisoner is precluded from bringing a § 1983 action to challenge "the fact or duration of his confinement," and seeks either "immediate release from prison" or the "shortening" of his term of confinement. Id. at 78-79. The Court allowed the § 1983 action to proceed because success on the claims would only provide new parole hearings, which would not "necessarily demonstrate the invalidity of confinement or its duration." Id. at 82. Here, even if success would require Petitioner's MPED to be recalculated or advance his next parole hearing, there is no indication that the invalidation of his disciplinary infraction would necessarily result in his release on parole. Nettles, 830 F.3d at 935; Ramirez, 334 F.3d at 859.

In sum, Petitioner's claims do not lie at "the core of habeas corpus" and "must be brought, if at all, under § 1983," because there is no showing that success on the merits would "necessarily" have an effect on the duration of his confinement. Nettles, 830 F.3d at 927. Accordingly, the Court recommends dismissing the Petition on the basis that the claims are not cognizable on habeas, without prejudice to Petitioner to present his claims, if he wishes, in a separate civil rights Complaint pursuant to 42 U.S.C. § 1983.

Although the Court may construe a habeas petition which presents claims which do not lie at the core of habeas as a § 1983 action "after notifying and obtaining informed consent from the prisoner," the Court recommends declining to so construe this action because it is not amenable to reconstruction on its face. See Nettles, 830 F.3d at 936 ("If

the complaint is amenable to conversion on its face, meaning it names the correct defendants and seeks the correct relief, the court may recharacterize the petition so long as it warns the *pro se* litigant of the consequences of the conversion and provides an opportunity for the litigant to withdraw or amend his or her complaint.")  Although it appears Petitioner has satisfied the exhaustion requirements for both habeas and civil rights actions, there are no allegations against the only named Respondent in this action (the Warden of the correctional institution where Petitioner is and was confined at the time of the disciplinary action), and it is unclear who Petitioner seeks to hold personally responsible for the alleged denial of his federal due process rights.  See e.g. Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."), citing Rizzo v. Goode, 423 U.S. 362, 370-71 (1976).  Accordingly, the Court recommends declining to construe this action as a civil rights complaint because it is not amenable to reconstruction on its face.  See Nettles, 830 F.3d at 936.

### B.    Merits

Respondent alternately argues that Petitioner is not entitled to habeas relief because the adjudication of his claims by the state court is neither contrary to, nor involves an unreasonable application of, clearly established federal law.  (Ans. Mem. at 4-7.)  The Court alternately finds that, to the extent Petitioner's claims sound in habeas, he is not entitled to federal habeas relief.

Petitioner is not entitled to federal habeas relief for claims which were adjudicated on their merits in state court unless he can first show that the state court adjudication of the claims: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C.A. § 2254(d) (West 2006).  A state court's decision may be

"contrary to" clearly established Supreme Court precedent (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision may involve an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. Relief under the "unreasonable application" clause of § 2254(d) is available "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." White v. Woodall, 572 U.S. ___, 134 S.Ct. 1697, 1706-07 (2014), quoting Harrington v. Richter, 562 U.S. 86, 103 (2011). To satisfy § 2254(d)(2), a petitioner must demonstrate that the factual findings upon which the state court adjudication rests, assuming it rests upon a determination of the facts, are objectively unreasonable. Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

As set forth above, Petitioner presented his claims to the state supreme court in a habeas petition which was summarily denied, as well as to the state appellate court which denied the petition in a reasoned opinion. This Court applies a presumption that: "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." Ylst v. Nunnemaker, 501 U.S. 797, 803-06 (1991). The last reasoned opinion here is the appellate court order denying habeas relief, which, as quoted above, denied Petitioner's claims, stating in relevant part:

> Prison disciplinary findings must be supported by "some evidence." (*In re Rothwell* (2008) 164 Cal.App.4th 160, 165, citing *Superintendent v. Hill* (1985) 472 U.S. 445, 455.) The relevant question is whether there is any evidence in the record that could support the conclusion reached by the prison authorities. (*Superintendent v. Hill, supra*, at pp. 455-456.) [¶] Here, the correctional officer found the cell phones hidden in a common area of the cell equally accessible to both Sevilla and his cellmate. Under our limited review, this constitutes "some evidence" to support a finding of

1    constructive possession even if Sevilla's cellmate acknowledged that the
2    contraband was his and Sevilla maintains that he did not know about it. (*In re Zepeda* (2006) 141 Cal.App.4th 1493, 1500.)

3    (Lodgment No. 8, <u>In re Sevilla</u>, No. D067575, slip op. at 1-2.)

4         "The requirements of procedural due process apply only to the deprivation of
5    interests encompassed by the Fourteenth Amendment's protection of liberty and
6    property." <u>Board of Regents v. Roth</u>, 408 U.S. 564, 569 (1972). State statutes and prison
7    regulations may grant prisoners liberty or property interests sufficient to invoke due
8    process protection. <u>Meachum v. Fano</u>, 427 U.S. 215, 223-27 (1976), citing <u>Wolff</u>, 418
9    U.S. at 558 (noting that "the touchstone of due process is protection of the individual
10   against arbitrary action of government, . . . and the minimum requirements of procedural
11   due process appropriate for the circumstances must be observed.")

12        In <u>Wolff</u>, the Supreme Court held that the liberty interest arising from prison
13   regulations regarding disciplinary hearings entitle the prisoner to certain procedural
14   protections, including: (1) written notice of the charges at least 24 hours in advance of
15   the hearing; (2) a written statement indicating upon what evidence the fact finders relied
16   and the reasons for the disciplinary action; (3) the opportunity to call witnesses and
17   present documentary evidence when doing so will not be unduly hazardous to
18   institutional safety or correctional goals; and (4) an impartial fact finder. <u>Wolff</u>, 418 U.S.
19   at 564-71. In <u>Hill</u>, the Court held that "revocation of good time does not comport with
20   'the minimum requirements of procedural due process' . . . unless the findings of the
21   prison disciplinary board are supported by some evidence in the record." <u>Hill</u>, 472 U.S.
22   at 454, quoting <u>Wolff</u>, 418 U.S. at 558. No due process violation occurs if "there is any
23   evidence in the record that could support the conclusion reached by the disciplinary
24   board." <u>Hill</u>, 472 U.S. at 455-56. The "some evidence" standard assures that "the record
25   is not so devoid of evidence that the findings of the disciplinary board were without
26   support or otherwise arbitrary." <u>Id.</u> at 457.

27        Petitioner does not allege he was deprived of any of the <u>Wolff</u> procedural
28   protections. Rather, he alleges that he was denied his federal due process rights under

1  <u>Hill</u> because there is no evidence to support the guilty finding or the forfeiture of his

2  earned good time custody credits.  (ECF No. 1 at 19-31.)

3       The state appellate court found that under California law the fact that the cell phone

4  was found in a common area of a shared cell provides sufficient evidence that Petitioner

5  constructively possessed the contraband.  The appellate court relied on <u>In re Zepeda</u>, 141

6  Cal.App.4th 1493 (2006), which held that despite the fact that the prison authorities never

7  negated the possibility that the contraband was in the cell without the petitioner's

8  knowledge, its presence in a common area equally accessible to both inmates who shared

9  the cell provided "some evidence" to support the disciplinary infraction, irrespective of

10 the petitioner's denial of its existence and the acknowledgment of ownership by his

11 cellmate.  <u>Id.</u> at 1500 (noting that <u>Hill</u> emphasizes that a reviewing court should not

12 engage in an "examination of the entire record" or "weighing of the (conflicting)

13 evidence."), quoting <u>Hill</u>, 472 U.S. at 455.

14      Federal courts "are bound by a state court's construction of its own" laws.  <u>Aponte</u>

15 <u>v. Gomez</u>, 993 F.2d 705, 707 (9th Cir. 1993); <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76

16 (2005) ("[A] state court's interpretation of state law, including one announced on direct

17 appeal of the challenged conviction, binds a federal court sitting in habeas corpus."),

18 citing <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal

19 habeas court to reexamine state-court determinations on state-law questions.")  This

20 Court must defer to the state court's construction unless it is "untenable or amounts

21 to a subterfuge to avoid federal review of a constitutional violation."  <u>Oxborrow v.</u>

22 <u>Eikenberry</u>, 877 F.2d 1395, 1399 (9th Cir. 1989).

23      Petitioner attempts to distinguish <u>Zepeda</u> from his situation by arguing that the

24 light fixture in his cell where the cell phones were hidden was accessible only from the

25 top bunk where his cellmate slept, rather than on a shelf which both inmates used as in

26 <u>Zepeda</u>. (ECF No. 1 at 26-27.)  Because Petitioner had access to the light fixture, he has

27 not shown that the state court's reliance on <u>Zepeda</u> is "untenable or amounts to a

28 subterfuge to avoid federal review of a constitutional violation."  <u>Oxborrow</u>, 877 F.2d at

1399; see People v. Rice, 59 Cal.App.3d 998, 1002 (1976) (holding that possession, whether actual or constructive, requires "that the accused had the right to exercise dominion and control over the place where it was found.")

The Court finds that the adjudication of Petitioner's claims by the state supreme court is neither contrary to, nor an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts in light of the evidence presented in state court.  Furthermore, even if the Court were conducting a de novo review of Petitioner's claims, it is clear that he received all the process he was due both in connection to his guilty finding and the loss of his custody credits, because "some evidence" exists in the record that he was in constructive possession of the contraband. Hill, 472 U.S. at 455-56; Wolff, 418 U.S. at 557 ("[T]he State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated."); see also Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987) (noting that the Hill standard is "minimally stringent," and "the court is not to make its own assessment of the credibility of witnesses or reweigh the evidence."), citing Hill, 472 U.S. at 455.

To the extent Petitioner challenges the 30-day loss of his yard privileges, he has failed to allege the existence of a liberty interest protected by federal due process.  See Sandin v. Conner, 515 U.S. 472, 483-84 (1995) (holding that a state prisoner can show a liberty interest protected by the Due Process Clause of the Fourteenth Amendment regarding the loss of privileges only if he of she alleges a change in confinement that imposes an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life," which requires a showing of "a dramatic departure from the basic conditions" of his or her confinement).

/ / /

15cv1280

1   Accordingly, the Court finds that Petitioner received all the process he was due in

2 connection to his disciplinary hearing and the forfeiture of his custody credits, and that

3 his claims are therefore without merit under any standard of review.  The Court therefore

4 recommends the Petition be denied.

5 **IV.    Conclusion and Recommendation**

6   For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court

7 issue an Order: (1) approving and adopting this Report and Recommendation; and (2)

8 directing that the Petition be **DENIED**.

9   **IT IS ORDERED** that no later than **January 20, 2017** any party to this action may

10 file written objections with the Court and serve a copy on all parties.  The document

11 should be captioned "Objections to Report and Recommendation."

12   **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with

13 the Court and served on all parties no later than **January 27, 2017**. The parties are

14 advised that failure to file objections with the specified time may waive the right to raise

15 those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449,

16 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

17   **IT IS SO ORDERED.**

18 DATED:  December 28, 2016

19   _____
    JILL L. BURKHARDT
20   United States Magistrate Judge

-15-                                    15cv1280